(November 2, 1990)

■ In the Matter of EDWARD P. ABBOTT, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent maintains an office for the practice of law in Ithaca, Tompkins County. He was admitted to practice by this court in 1952.

Petitioner, the Committee on Professional Standards, by a

petition of charges dated May 24, 1990, has accused respondent of engaging in improper ex parte communications with a court, sending correspondence in the course of representing his clients which contained false information and which was obviously intended to harass or maliciously injure another, aiding a nonlawyer in the unauthorized practice of law, making false and unsupported allegations in court proceedings, attempting to mislead and deceive petitioner, and making false and unsupported allegations during the course of an investigation by petitioner. Respondent has admitted the charges and specifications in his answer and this court has previously granted petitioner's motion pursuant to 22 NYCRR 806.5 for an order declaring that no factual issues were raised by the pleadings and fixing a time at which respondent could be heard in mitigation. Respondent was heard in mitigation on October 18, 1990.

The charges against respondent stem from his representation of Raymond J. Baetz in litigation with Sondra Dahl; his representation of Virginia Naples, executrix of the estate of Esther L. Bruce; his employment of a nonlawyer to do legal work for him; and his alleged attempts to mislead and deceive petitioner in its investigations of these matters.

Baetz and Dahl became embroiled in litigation with each other beginning about 1986. Dahl allegedly breached a promise to marry Baetz and converted a joint savings account established by Baetz for the purchase of a joint residence. Dahl was represented by L. Richard Stumbar, Esq. In February and April 1986, respondent wrote two letters to Dahl's employer making various disparaging remarks about Dahl, both as an employee and personally. The letters were essentially prepared by Baetz and their contents were not verified by respondent. They were copied to many of Dahl's co-workers. Specifications 1 through 7 of charge II of the petition concern the letters and charge II states that the correspondence contained false information, was obviously intended to harass or maliciously injure another, and that, by sending it, respondent violated the Code of Professional Responsibility DR 1-102 (A) (4) and (5) and DR 7-102 (A) (1), (5) and (7). Specification 8 of charge II notes that Dahl sued Baetz for defamation because of the letters and was awarded $15,000.

On September 7, 1988, respondent wrote to Hon. Robert S. Rose, a Justice of the Supreme Court in Binghamton, regarding the *Dahl v Baetz* litigation, seeking a jury trial. A nonjury trial had previously been set for November 15, 1988. Baetz and respondent failed to appear on November 15 and Dahl

was granted a default judgment. On November 29, 1988, respondent wrote to Justice Rose explaining the default and inquiring about procedures for opening it. Respondent did not send copies of either the September 7 or the November 29 letters to Dahl's attorney. Specifications 1 and 2 of charge I cite these letters as ex parte communications with the court in violation of the Code of Professional Responsibility DR 7-110 (B).

Respondent unsuccessfully appealed a denial of his motion to vacate the default judgment awarded to Dahl. During the course of litigation in this court regarding motions to dismiss the appeal and motions for extensions of time to perfect the appeal, respondent submitted two affirmations making various accusations against attorney Stumbar, including charges of obstruction, bad faith motions to dismiss the appeal, perjury, and causing Baetz to be suspended from his employment. Respondent also wrote two letters to Stumbar of similar ilk which included allegations of conspiracy between Stumbar and Justice Rose. A third similar letter was sent by respondent to Justice Rose and Stumbar which focused on Justice Rose's alleged bias in favor of Stumbar. The above affirmations and letters are outlined in specifications 4 through 8 of charge IV which generally accuses respondent of making false and unsupported allegations in court proceedings in violation of the Code of Professional Responsibility DR 1-102 (A) (4), (5) and (6), DR 7-102 (A) (1), (2) and (5), and DR 8-102 (B).

Respondent also represents Virginia Naples, executrix of the estate of Esther L. Bruce who died in November 1985. Naples is Bruce's daughter. A dispute arose over funds of Bruce in a joint brokerage account in Florida, specifically whether the funds should be considered part of the estate or whether they belonged to Naples as surviving joint tenant. Naples was sued in Supreme Court, Tompkins County, by the estate beneficiaries seeking distribution of the funds through the estate. The beneficiaries were represented by Anna K. Holmberg, Esq.

On January 3, 1989, judgment was entered in favor of plaintiffs by Hon. William N. Ellison. Among other things, Naples was ordered to render an accounting of the estate. Respondent filed a notice of appeal. Perfection of the appeal was delayed by a dispute which arose over the proper contents of the appellate record and by respondent's and his secretary's medical problems. On September 12, 1989, plaintiffs commenced a proceeding in Tompkins County Surrogate's Court before Hon. William J. Barrett to require Naples to render the

final accounting. By order dated October 11, 1989, the Surrogate ordered Naples to render such an accounting. The order stated that the executrix had failed to appear and that there was no opposition to the petition. Respondent appealed from the October 11 order and moved for a stay of the requirement of a final accounting pending determination of the appeal. On December 13, 1989, the motion was denied and a cross motion to dismiss the appeal from the October 11 order was granted. A later motion for reconsideration by respondent was denied. Meanwhile, on December 21, 1989, Justice Ellison certified the record on appeal from the January 3, 1989 order in Supreme Court. This court heard oral argument of the appeal at the September 1990 term.

Charge IV, specifications 1 through 3, accuses respondent of making false and unsupported allegations during the course of the above court proceedings in violation of the Code of Professional Responsibility DR 1-102 (A) (4), (5) and (6), DR 7-102 (A) (1), (2) and (5) and DR 8-102 (B). Specifically, in a letter to Judge Barrett, respondent claimed the petition for a final accounting was premature and deceptive; in an affirmation by respondent dated October 31, 1989, filed in the Tompkins County Surrogate's Court, respondent stated that the petition by attorney Holmberg was materially misleading by omitting information and evidence (presumably, the pendency of the unperfected appeal) and that Holmberg and Judge Barrett were guilty of fraud; and, in an appellant's brief concerning Judge Barrett's October 11, 1989 order, respondent stated that Judge Barrett, Holmberg and the Surrogate's Court Clerk all knew that the proceeding leading to Judge Barrett's order was fictitious and that all three of them had perpetrated a fraud.

Charge III accuses respondent of aiding a nonlawyer, Betty O. Muka, in the unauthorized practice of law, in violation of the Code of Professional Responsibility DR 3-101 (A). Specifications 1 and 3 of charge III state that, in the Bruce estate and Baetz/Dahl matters, respondent permitted Muka to perform legal services for him including legal research, preparation of affidavits and motions, as well as the preparation of the record on appeal and briefs to this court. Specification 2 cites an affidavit dated October 5, 1989 by Muka in connection with the Bruce estate matter which respondent incorporated by reference and affirmed to be true in his affirmation dated October 31, 1989. In her October 5 affidavit, Muka asserted various legal conclusions concerning the Bruce estate matter, such as that at trial before Justice Ellison, the residuary legatees and Holmberg violated the Dead Man's statute by

giving inadmissible testimony; that Justice Barrett should not make any order giving only 10 days' notice to a person not to be found in New York State but should give 20 days' notice as required by the SCPA; and that the default by Naples and respondent on the final accounting was entirely contrived and the petition should be dismissed if not withdrawn. Notably, specification 4 states that respondent permitted Muka to research and prepare in major part his responses to petitioner in connection with the complaints filed by attorneys Holmberg and Stumbar concerning respondent's conduct.

Charge V accuses respondent of attempting to mislead and deceive petitioner in violation of the Code of Professional Responsibility DR 1-102 (A) (4) and (5). Specifications 1 and 2 cite untrue statements by respondent in response to the Stumbar and Holmberg inquiries to the effect that he never employed Muka but she occasionally did contract typing and other officer work for him.

Charge VI accuses respondent of making false and unsupported allegations during the course of petitioner's investigation, in violation of the Code of Professional Responsibility DR 1-102 (A) (4), (5) and (6). Specifications 1 and 2 cite allegations respondent made in response to the Holmberg inquiry that Holmberg and Judge Barrett were guilty of fraud and that Holmberg committed perjury in various ways. Specifications 3 and 4 cite allegations by respondent in response to the Stumbar inquiry accusing Stumbar of committing perjury in various ways and engaging in tortious and malicious civil prosecution, among other things. Respondent also alleged that the Rhode Island disciplinary proceedings which resulted in Muka's disbarment were in violation of the Rhode Island Constitution and that Muka was disbarred through the efforts of organized crime.

It is clear that respondent is guilty of very serious professional misconduct. He has engaged in improper ex parte communications with a court, sent correspondence in the course of representing his clients which contained false information and which was obviously intended to harass or maliciously injure another, aided a nonlawyer in the unauthorized practice of law, made false and unsupported allegations in court proceedings, attempted to mislead and deceive petitioner, and made false and unsupported allegations during the course of an investigation by petitioner.

We note that respondent has enjoyed a previously unblemished disciplinary record since his admission in 1952, has stated that he will take steps to prevent a recurrence of his

unprofessional conduct, has expressed remorse for his misconduct and accepted full responsibility therefor, and has submitted several favorable character affidavits.

Nevertheless, in view of the very serious nature of the misconduct committed and in order to protect the public, deter similar misconduct, and preserve the reputation of the Bar, we conclude that respondent should be suspended from the practice of law for a period of three years.

Respondent suspended from the practice of law for a period of three years and until further order of this court, the date of commencement to be fixed in the order to be entered hereon. Kane, J. P., Weiss, Yesawich, Jr., Mercure and Harvey, JJ., concur.